AMERICAN FOUNDRY & MACHINERY CO. *v.* CHARLEVOIX
CIRCUIT JUDGE.

1. INJUNCTION—BOND—NECESSITY.

Where replevin has been brought to recover machinery sold to
the builder of a mill, title to remain in the seller until he is
fully paid, an injunction staying removal of the machinery,
until the rights of a mortgagee of the land can be adjudicated
does not stay the action at law so as to require a bond under
section 502, 1 Comp. Laws.

2. SAME.

Where, in such a case, no injury would be done to the machin-
ery by permitting it to remain in the mill until the determi-
nation of the questions involved, and irreparable injury would
result to the mortgagee by its removal, and the mortgagee,
under the allegations of his bill, is under no obligation to pay
the debt, or, if he were, should be permitted to make pay-
ment and avoid the destruction of his security, no bond
should be required.

Mandamus by the American Foundry & Machinery
Company to compel Frederick W. Mayne, circuit judge
of Charlevoix county, to vacate an order granting a pre-
liminary injunction. Submitted October 18, 1904. (Cal-
endar No. 20,718.) Writ denied November 9, 1904.

The relator seeks the writ of mandamus to compel the
respondent to vacate an order granting a preliminary in-
junction. Upon filing the bill the injunction was ordered
and issued. Relator filed an affidavit, and moved for a
dissolution of the injunction, which respondent refused.

The material facts alleged in the bill of complaint are:
That a corporation known as the Charlevoix Sugar Com-
pany constructed a factory and refinery. That it author-
ized the issue of bonds, not exceeding the sum of
$250,000, and a mortgage to secure the same, to the United
States Mortgage & Trust Company; said mortgage to
cover all the real estate, property, chattels, and effects of

said corporation as collateral security for the payment of the bonds. That bonds were issued. That complainants own some of said bonds. That the mortgage was executed July 24, 1902. That the Charlevoix Sugar Company made a contract with the National Construction Company, of Detroit, Mich., to build, construct, and equip the necessary buildings for said sugar company, and to furnish all machinery required. That in the equipping of said factory said National Construction Company purchased from the relator, the American Foundry & Machinery Company, certain machinery. That said machinery was firmly and securely attached to said factory—built into it on a brick and concrete base—and cannot be removed without causing the destruction of the walls of the factory. That by the terms of the contract between the relator and the National Construction Company the relator agreed to furnish to the construction company this machinery for the sum of $32,106.

The contract for the purchase price thereof provided:

"It is further expressly agreed by and between the parties hereto that the sale of the machinery herein is a conditional and not an absolute sale and is conditioned upon the payment by said second party of the purchase price thereof in the manner hereinbefore provided; that the machinery covered by this contract shall be and remain personal and not real property until the purchase price hereinbefore stated is fully paid to said first party, and that the title to said machinery and to every part and portion thereof shall remain vested in said first party, its successors or assigns until the purchase price thereof, hereinbefore stated, is fully paid, or until any notes, drafts, or acceptances or renewals thereof taken on account of said purchase price by said first party, or any judgment or judgments rendered thereon, or any part thereof and the taxable costs thereon, shall have been fully paid, satisfied, and discharged. It being expressly agreed that the taking of any note, bond, certificate of stock, or other property by way of security, or the conversion of same into cash to apply on the purchase price of said machinery, or the filing of any claim of lien by said first party, shall in no way constitute or be held to be a waiver by said first party of

this term of this contract, or of its right to repossess itself of said machinery so long as any portion of said purchase price remains unpaid and said second party is in default therefor, and in event of this second party failing to pay said first party the amount due it under this contract in the manner hereinbefore provided, then and thereupon it shall be lawful and the said first party is hereby licensed and empowered, without process of law, to enter upon the premises wheresoever the said machinery may be situate, without the giving of any notice of its intention to do so, and to remove the same or any part thereof and retake the same into its possession, custody, and control and treat any and all payments theretofore made on account of said purchase price as having been paid for the reasonable use, wear and tear of said machinery."

That the said relator knew that said sugar company had issued bonds and executed and delivered said mortgage to secure them; knew that said bonds would be sold and disposed of to the public, and that the bondholders would look to the said factory and property for its security.

The bill alleges upon information and belief that said National Construction Company has paid the relator in full; that the relator, claiming that its contract with the National Construction Company had not been fulfilled, and that there was still an amount due, brought suit in replevin for the machinery; that the sheriff of the county, by virtue of said writ, had levied upon said property, and was about to remove the same; that said replevin suit is at issue, and ready for trial; that complainants have no desire and do not intend to prevent or delay the trial of said cause; that the complainants applied to the United States Mortgage & Trust Company to commence action to restrain relator from removing said machinery, but that said company has refused to do so; that complainants are one of the cestuis que trustent to be benefited by said mortgage; that said action of replevin was commenced against the sugar company and the National Construction Company; that the complainants are not interested in the outcome of the replevin suit, but insist that the rights of the bondholders in said property will remain the same whichever party

prevails in that suit; that the rights of the bondholders are superior to those of relator, and that the relator has no right to remove the machinery, for the reason that it is a part of the realty, and a part of the security claimed by them. The bill prays that the relator may be enjoined from removing the machinery until the further order of the court, and the rights of the parties may be determined.

The bill further alleges that the Charlevoix Sugar Company is insolvent; that the machinery in dispute was delivered to the National Construction Company after the mortgage to the trust company was duly recorded; asks for an accounting between relator and the National Construction Company to determine the amount due, so that the complainants, or the trust company for the bondholders, may have the opportunity to protect their security by the payment of the claim, should it be found that the title of the relator to the property is paramount to the lien of the bondholders.

The affidavit made by the attorney for the relator, in opposition to the preliminary injunction, sets up the contract of sale to the National Construction Company, the failure to pay, and the proceedings in the replevin suit, the levy of the sheriff, the appraisal of the property at $16,000, and the giving of a bond in the sum of $32,000. The court did not require, and the complainants in the chancery suit did not give, a bond under 1 Comp. Laws, § 502.

*Anderson & Rackham*, for relator.

*Lisle Shanahan*, for respondent.

GRANT, J. (*after stating the facts*). The statute provides that "no injunction shall issue to stay the trial of any personal action in a court of law, until the party applying therefor shall execute a bond with one or more sufficient sureties to the plaintiff in such action at law," etc. 1 Comp. Laws, § 502.

The trial at law is not stayed by the injunction, and counsel assert in their brief that the case has since been tried.

There is no evidence of this in the record, and we cannot now consider it. The respondent, in refusing to dissolve the injunction, stated that " the trial of the cause is not sought to be restrained, and whether the present restraining order would be of any force to prevent the removal of the property after judgment I do not now determine." No precedents under this statute or a similar one are cited. Probably the question is new. The claim of the bondholders is that this ponderous machinery was sold and purchased with the knowledge that it must necessarily become so affixed to the realty as to become a part of it. The bill of complaint asserts that the bondholders had no knowledge of the contract between relator and the National Construction Company, and that they are innocent mortgagees.

Suppose that a vendor were to sell brick, stone, or iron to form a part of the structure of a building, upon the condition that the title thereto should remain in him until payment of the purchase price; that the building were constructed; and the owner should sell or mortgage it to a party who had no knowledge of such contract of sale— would the vendor have the legal right to tear down the building to take his brick, stone, or iron ? As between the vendor and vendee, the vendee may be bound by such conditions; but it does not follow that the vendor would possess such right against an innocent vendee or mortgagee. The court now has only the allegations in the bill to act upon. The evidence may disclose a different state of facts. It is not claimed that the property will suffer injury if left in the building until the rights of the parties are determined. If the allegations of the bill are true, the removal of this property will result in great and irreparable injury to the bondholders. If the contention of the bondholders is correct, they are under no obligation to pay the debt due the relator. They ought not, therefore, in good conscience, to be required to give bond to pay it until the right of relator to seize its property is determined. If it is determined in the suit at law that that right exists, and

there is a balance still unpaid, the bondholders ought in good conscience and equity to have the right of payment, and thus avoid the destruction of their property.

The contention on behalf of relator appears to be that, to restrain the removal of the property is, in effect, to restrain the trial of the suit at law, and therefore in violation of the statute. We think otherwise. We agree with the circuit judge in holding that the statute does not apply to such a case as this, and that it was no abuse of discretion to keep this property in place and intact until the rights of the parties are determined.

The writ is denied.

The other Justices concurred.